## IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**MARILYN F. MINOR,**
**Petitioner Below, Petitioner**

**v.) No. 24-ICA-245**    (Fam. Ct. of Marion Cnty. Case No. FC-24-2022-D-323)

**KEVIN S. FORD,**
**Respondent Below, Respondent**

### MEMORANDUM DECISION

Petitioner Marilyn F. Minor ("Wife") appeals the May 17, 2024, order from the Family Court of Marion County, which held her in contempt of the parties' final divorce order. Respondent Kevin S. Ford ("Husband") did not participate in this appeal.[1]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This Court has previously addressed an appeal concerning the final divorce order which is the subject of contempt petition in this case. *See Minor v. Ford*, No. 23-ICA-130, 2024 WL 794605 (W. Va. Ct. App. Feb. 27, 2024) (memorandum decision) ("*Minor I*"). That decision contains a detailed recitation of the facts and, thus, we need only provide a brief discussion of the relevant factual and procedural history in this appeal.

The parties separated on April 9, 2022, and Husband vacated the marital home. The final divorce order was entered on February 22, 2023. As part of that order, the family court considered Husband's request for the return of several items of his separate property. He claimed these items were not returned by Wife following the parties' separation. In support of his request, Husband filed a handwritten list of approximately forty-nine items along with the items' estimated values. Addressing these items, the final divorce order made the specific finding that Husband had established Wife possessed two of his family heirlooms, namely a lamp and clock. Wife was directed to return those items, as well as any other items on Husband's list that were in her possession, within ten days.

On March 7, 2023, Husband filed the underlying contempt petition, alleging that while Wife had returned the lamp and clock, she had failed to return the remaining items

---

[1] Wife is represented by Marci R. Carroll, Esq.

on his list as required by the final divorce order. The family court held the contempt matter in abeyance pending this Court's resolution of *Minor I*. We note that the family court's ruling with respect to Husband's list of items was not challenged by Wife in *Minor I*.

A hearing on the contempt petition was held on May 16, 2024. At the hearing, Husband's evidence was his previously filed handwritten list of separate property, and his general contention that the items had not been returned to him. On cross-examination, Wife's counsel asked Husband to describe such things as the color, size, or brand of each item on the list, which he did to the best of his recollection. Wife testified that she did not possess any of the list's remaining items as described by Husband. Rather, she provided photographs of several items presently in her home. These photographs showed items included on Husband's list such as bedding, furniture, rugs, and kitchenware. The import of those photographs was that the items Wife possessed were clearly dissimilar to the distinguishing characteristics that Husband used to describe his items and, thus, she did not possess any of his items. Thereafter, the hearing concluded, and the family court took the matter under advisement.

On May 17, 2024, the family court issued the order presently on appeal. According to the order, the family court considered the evidence presented at the contempt hearing, as well as the entire case record. Thereafter, the family court found that Wife had maintained possession of the former marital home and its contents since the parties' separation on April 9, 2022, and Husband's items were in the home at that time. It found that Wife's photographs were not persuasive because they were recently taken, only depicted fourteen of the remaining forty-seven items on Husband's list and could not establish that those were the only items from that list in her home on the day the parties separated.

The family court also gave no credibility to Wife's testimony that she did not have the items. Instead, the family court found that while the items may not presently be in Wife's possession, it was undisputed that those items were in her possession when Husband left the marital home on April 9, 2022. Next, it was noted that during the divorce proceedings there was a temporary family court order in effect, which placed Husband's items in a constructive trust pending a final hearing and that Wife violated that order by not maintaining Husband's items in her possession. The family court also found that Wife had failed to challenge Husband's list of items or their values at the final divorce hearing or the contempt hearing. As such, it was determined that the values provided by Husband were reasonable and the total value of remaining items was found to be $3,735.

Ultimately, the family court's order held Wife in contempt for failing to return Husband's property as ordered, deferred sanctions, and directed that Wife could purge herself of contempt by returning the remaining items within ten days of the order or by paying Husband $100 per month beginning June 1, 2024, and continuing each month

2

thereafter until the sum of $3,735 was paid in full.[2] Thereafter, the family court entered an order, dated June 25, 2024, which stayed the May 17, 2024, order pending this appeal.

On appeal, we apply the following standard of review:

> In reviewing the findings of fact and conclusions of law of a circuit court supporting a civil contempt order, we apply a three-pronged standard of review. We review the contempt order under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

Syl. Pt. 1, *Carter v. Carter*, 196 W. Va. 239, 470 S.E.2d 193 (1996).

Wife's appeal raises two closely related assignments of error which we have consolidated for the purposes of this appeal.[3] *See Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (per curiam) (stating the general proposition that related assignments of error may be consolidated for ruling); *Jacquelyn F. v. Andrea R.*, No. 16-0585, 2017 WL 2608425, at *1 n.2 (W. Va. June 16, 2017) (memorandum decision) (restating assignments of error where they involve clearly related issues). As restated, Wife's overarching argument is that the family court erred by holding her in contempt for failing to return Husband's items. We disagree with Wife on this issue.

In support of her argument, Wife argues two points. First, she maintains that the final divorce order only required her to return Husband's remaining items to the extent she had them and never made a specific finding that she had the items in her possession. It is Wife's position that she cannot be held in contempt because Husband did not produce sufficient evidence to establish that she had possession of his remaining items. Instead, she asserts that her evidence established she did not possess the items. We are unpersuaded by this contention.

On this issue, we begin by noting that because Wife never challenged the family court's rulings and directives contained in the final divorce order with respect to Husband's list of items in *Minor I*, any attempt to relitigate those issues has been waived. Further, appellate courts have generally recognized that a lower court's interpretation of its own order is entitled to some degree of deferential treatment on appeal. *See Zuspan v. Zuspan*,

---

[2] Wife does not directly challenge the contempt sanction or purge conditions on appeal.

[3] Specifically, we have consolidated Wife's second assignment of error which challenged the family court's consideration of its prior orders as part of its contempt ruling when those orders were not specifically pled by Husband in his contempt petition.

No. 22-ICA-155, 2023 WL 3172020, *2 (W. Va. Ct. App. May 1, 2023) (memorandum decision) (collecting cases). Moreover, this Court cannot set aside a family court's factual findings "unless they are clearly erroneous." *James W. v. Ciara R.*, No. 23-ICA-237, -238, -239, 2024 WL 1740353, at *6 (W. Va. Ct. App. Apr. 22, 2024) (memorandum decision). A finding is clearly erroneous only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Syl. Pt. 1, in part, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). Under the clearly erroneous standard, an appellate court does not reweigh the evidence and cannot reverse a family court's findings simply because it may have viewed the evidence differently. *See Mulugeta v. Misailidis*, 239 W. Va. 404, 408, 801 S.E.2d 282, 286 (2017). Finally, a family court is entitled to deference to the extent it relies on determinations it made of the parties' credibility. *See Thomas E. v. Amy F.*, No. 13-0176, 2013 WL 5708438, at *2 (W. Va. Oct. 21, 2013) (memorandum decision).

Applying these principles to the present case, we cannot conclude that the family court's findings of fact and conclusions of law in its May 17, 2024, order were clearly erroneous; similarly, we cannot conclude the family court's ultimate disposition is an abuse of discretion. Here, the family court interpreted the final divorce order and reasonably determined it was undisputed that all the items had been in Wife's possession since April 9, 2022, the court intended for Wife to return all the items to Husband, and Wife did not return them as ordered.

While Wife disagrees with the findings made by the family court and invites this Court to review the evidence and reach a more favorable outcome, we decline to do so. As previously stated, we cannot reweigh the evidence or substitute our judgment for that of the family court. Given the family court's intimate familiarity with the proceedings, it was in the best position to weigh evidence and assess credibility in reaching the ultimate determination that Wife was in contempt of the final divorce order. As such, we find that the family court acted within its discretion when it held Wife in contempt.

Lastly, Wife argues that the family court erred because it impermissibly relied upon the constructive trust language of a prior temporary order to impose a finding of contempt when Husband did not include that order in his contempt petition. At the outset, we note that Wife advances this argument without citation to any supporting legal authority. Nevertheless, upon review, we find this contention is unsupported by the record. The family court's order expressly states that its ruling was based upon consideration of the entire record, and it included language regarding the constructive trust as part of the contempt order's findings of fact. However, it is clear from the entirety of the family court's order that its finding of contempt was expressly based upon Wife's failure to return the remaining items as directed by the final divorce order. Thus, following our review of the record in this case, we decline to disturb the family court's rulings as set forth in its May 17, 2024, order.

Accordingly, we affirm.

Affirmed.

**ISSUED:** February 28, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear

**DISSENTING:**

Judge S. Ryan White

WHITE, Judge, dissenting:

I dissent from the majority's decision to affirm the family court's May 17, 2024, order adjudicating petitioner in civil contempt. In the contempt action below, respondent had the burden of proving that petitioner willfully violated a clear family court order by not returning his personal property. Respondent alleged that petitioner violated the family court's final divorce order. However, respondent did not meet this burden because the final divorce order was vague and merely ordered petitioner "to return the items she ha[d] in her possession" and "to return the items to the extent that she ha[d] them." Yet, this order also acknowledged that the parties disputed possession of the property. Further, petitioner disputed possession in the contempt action and respondent presented no evidence showing petitioner had possession of his property. Moreover, in its contempt order, the family court never found petitioner had possession. On this record, the family court had no basis upon which to find petitioner in contempt. Accordingly, I dissent to the majority's decision upholding the contempt order.

In its contempt order, the family court found petitioner in civil contempt for "failing to protect" and failing to return to respondent forty-seven items identified as respondent's separate, personal property. The family court found that petitioner violated (1) the parties' final divorce order; (2) "the constructive trust" created by its emergency protective order; and (3) the order scheduling the final divorce hearing.[4] In the final divorce order, the family

---

[4] The contempt order provided petitioner the opportunity to purge herself of contempt by returning the items to respondent within ten days of its entry or by paying respondent the sum of $3,735.00, the court-determined value of the personal property based upon respondent's estimates, in $100.00 monthly installments. The family court further ordered that "should petitioner fail to purge herself of contempt, it may impose further sanctions up to and including incarceration."

court noted that respondent alleged petitioner had "an extensive list of items of his separate property" (the forty-seven items at issue in this appeal) in her possession and that she had failed to return the same to him. The family court further acknowledged that petitioner denied respondent's allegation, asserting that respondent had already removed all his separate personal property from the home. The final divorce order also reflects that both petitioner and respondent presented evidence in support of their claims during the divorce hearing. However, the family court made no ruling on the parties' dispute over possession of the forty-seven items of personal property. In fact, the family court never found that petitioner had, or previously had, any of these items in her possession. Instead, the family court equivocated and ordered petitioner to return respondent's items "to the extent she has them" and the items "that she has in her possession."[5]

The Supreme Court of Appeals of West Virginia explained in *Carpenter v. Carpenter,* 227 W. Va. 214, 219, 707 S.E.2d 41, 46 (2011) that the burden of proof in a civil contempt proceeding "rests with the complaining party to demonstrate . . . that the defendant is in noncompliance with a court order." Additionally, the complaining party "is required to demonstrate that the alleged contempt prejudiced his or her rights." *Id.* "The purpose of a civil contempt proceeding is to preserve or enforce the rights of a private party and to compel obedience to a court order that benefits such party." *State ex rel. Robinson v. Michael,* 166 W.Va. 660, 672, 276 S.E.2d 812, 819 (1981).

Under *Carpenter*, respondent had the burden of proving that petitioner willfully violated the terms of the final divorce order by not returning the items to him. However, because the family court's final divorce order contained the ambiguous requirement that petitioner "return the items she ha[d] in her possession" and "return the items to the extent

---

[5] The family court found that,

[t]he Respondent testified and provided an extensive list of items of separate property that were not returned to him following the parties' separation. (Respondent's Exhibit 4) The Petitioner's witness testified that the Respondent removed all of his items from the home. The Respondent's mother testified that the clock, shown in Respondent's Exhibit 6 belongs to her. She further testified that Petitioner told her she still had the clock. Respondent's Exhibit 6 also shows a lamp that was given to him by his grandmother . . . The Petitioner shall return all the items requested by the Respondent *to the extent that she has them.* The Court specifically finds the Petitioner has the Respondent's mother's clock and the lamp pictured in Respondent's Exhibit 6 and she is directed to return them within 10 days of the entry of this Order[5]. . . Petitioner shall return to the Respondent all other items shown on Exhibit 4 (attached hereto) *that she has in her possession* within ten days of the entry of this Order. (emphasis added).

6

that she ha[d] them," respondent could not meet his burden without proving that petitioner had possession of the items. But from the family court's contempt order, it does not appear that respondent presented any evidence (other than his own testimony) to prove petitioner ever had possession of the forty-seven items, and the family court did not include a finding that petitioner had possession of the items, either at the time of the final divorce hearing or at the time of the contempt hearing. Instead, the family court made the following findings:

> 10.  While she may no longer have them in her possession, she did have them when the Respondent was removed from the home on April 9, 2022. If she no longer has the Respondent's separate property, as she claimed during the hearing, this is a violation of the Emergency Protective Order and the Order Setting Initial and/or Final Divorce Hearing, both of which provided for a constructive trust[,] because she destroyed or otherwise disposed of the Respondent's separate property.

> 11.  The values provided by the Respondent for his items of separate property were not contested by the Petitioner either at the Final Divorce Hearing or in today's hearing. The total value of the property not returned to the Respondent is $3,735.

> 12.  The Court finds the Petitioner's actions of not protecting the Respondent's property in violation of the constructive trust and the Final Order to be willful and contumacious. . . .

The family court's contempt order also subverts petitioner's due process rights because it finds petitioner violated three prior orders of the court. However, in his contempt petition, respondent only alleged that petitioner violated the final divorce order by failing to return his personal property to him. Respondent neither alleged nor presented evidence to suggest that petitioner destroyed, or otherwise disposed of, his personal property. Nevertheless, the family court *sua sponte* found petitioner in contempt for violating (1) a constructive trust created by the emergency protective order and (2) the order setting initial and/or final divorce hearing, by destroying or otherwise disposing of respondent's property.[6]

---

[6] The family court found in its contempt order that

> [t]he Court does not find the Petitioner's testimony that she does not have the other 47 items to be credible. While she may no longer have them in her possession, she did have them when Respondent was removed from the home on April 9, 2022. If she no longer has the Respondent's separate property, as she claimed during the hearing, this is a violation of the Emergency Protective Order and the Order Setting Initial and/or Final Divorce Hearing,

On appeal, petitioner asserts that the emergency protective order, the order setting initial and/or final hearing, and the constructive trust were never mentioned during the contempt hearing, and a review of the hearing recording confirms this. (*See generally* May 16, 2024, Hearing Recording). Further, the family court made no rulings on the record during the hearing. At its conclusion, the family court took the matter under advisement and informed the parties that it would issue an order. Accordingly, petitioner received no notice of any allegation that she violated three of the court's orders or any constructive trust imposed by the family court, and she had no opportunity to respond before the family court found her in contempt of these orders.

The record on appeal establishes that petitioner maintained throughout the proceedings below that respondent removed his personal property from the home before the divorce hearing on February 7, 2023. The family court confirms this in the divorce order with its finding that "Petitioner's witness testified that Respondent removed all his items from the home." Even though the family court was aware that petitioner and respondent disputed who had possession of the items, the family court chose not to decide that dispute. Therefore, it appears that the family court *sua sponte* raised the constructive trust so that it could find petitioner in civil contempt. Such explains why the family court found in its contempt order that, "petitioner's actions of *not protecting the Respondent's property* in violation of the constructive trust and the Final Order to be willful and contumacious," before adjudicating petitioner in civil contempt for her failure to return Respondent's separate property to him. (emphasis added).

Lastly, in making its decision to affirm the family court's contempt order, the majority appears to rely, at least in part, on the fact that petitioner did not challenge the family court's ruling "with respect to Husband's list of items" in her original appeal of the final divorce order (*Minor I*).[7] However, the majority's reliance on this fact in reaching its

both of which provided for a constructive trust, because she destroyed or otherwise disposed of the Respondent's separate property.

[7] It appears that the majority is referring to this passage from *Minor I* that includes the Court's summary of the family court's ruling as to respondent's list of personal property: "[t]he family court also determined that Husband had provided an extensive list of separate property that was not returned to him when the parties separated. The family court ordered Wife to return those items and for Husband to return any of Wife's items in his possession within ten days . . . ." *Minor v. Ford,* No. 23-ICA-130, 2024 WL 794605, at * 1 (W. Va. Ct. App. Feb. 27, 2024) (memorandum decision). The majority is correct that the family court determined that respondent made a list of personal property which he alleged petitioner had in her possession. However, as demonstrated by the final divorce order, as quoted in this dissent, the family court did not find that petitioner had any of those items in her possession, and it did not order petitioner to return the full list of items to respondent. The family court merely ordered petitioner to return the items to respondent

decision is misplaced because the family court made no adverse ruling against petitioner in the final divorce order with respect to the respondent's list of items of personal property. Again, the family court only ordered petitioner to "return all the items requested by the Respondent *to the extent that she ha[d] them*" and to "return to the Respondent all other items shown on Exhibit 4 . . . *that she ha[d] in her possession* within ten days of the entry of this Order." (emphasis added). As reflected in the final divorce order, the family court was aware that petitioner denied having the forty-seven items in her possession, and the family court did not conclude otherwise. Accordingly, there was no ruling pertaining to respondent's list of items in the final divorce order for petitioner to challenge in her first appeal.

For these reasons, I respectfully dissent.

---

"to the extent she has them" and to "return to the Respondent all other items shown on Exhibit 4 . . . *that she has in her possession* within ten days of the entry of this Order."