# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**August 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**1000 LINCOLN DRIVE OPERATIONS, LLC,**
**d/b/a VALLEY CENTER,**
**Petitioner Below, Petitioner**

**v.) No. 24-ICA-490**          (Case: In Re: 1000 Lincoln Drive Operations, LLC,
d/b/a Valley Center)

**WEST VIRGINIA DEPARTMENT**
**OF HUMAN SERVICES,**
**BUREAU FOR MEDICAL SERVICES,**
**Respondent**

## MEMORANDUM DECISION

Petitioner 1000 Lincoln Drive Operations, LLC d/b/a Valley Center ("Valley Center") appeals the respondent West Virginia Department of Human Services, Bureau for Medical Services' (the "Bureau") November 7, 2024, Decision, which adopted the hearing examiner's October 23, 2024, Recommended Decision. In the Recommended Decision, the hearing examiner concluded that Valley Center's repayment of $834,844.15 of State Medicaid funds due to incomplete records was warranted, based on the results of a Medicaid Unified Program Integrity Contractor audit performed by contractor SafeGuard Services, LLC ("SafeGuard"). The Bureau filed a response.[1] Valley Center filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Bureau's order is appropriate under Rule 21(c) of the Rules of Appellate Procedure.

This action arises from an administrative appeal of the Bureau's determination that it overpaid Valley Center for certain nursing facility Medicaid claims, which were denied subsequent to a post-payment audit. The audit was conducted by government contractor SafeGuard, the contractor for the Unified Program Integrity Contract in the Southeast region. The audit of WSSC was limited to claims for skilled nursing services submitted with revenue code 0550.

---

[1] Valley Center is represented by Jeffrey M. Wakefield, Esq., and L. Elizabeth King, Esq., Flaherty Sensabaugh & Bonasso PLLC. The Bureau is represented by Attorney General John B. McCuskey, Esq., and Assistant Attorney General Gary L. Michels, Esq.

1

On February 24, 2021, SafeGuard provided its initial report to Valley Center. The initial report determined that one hundred and eighty-five (185) claim lines for thirty-five (35) Valley Center residents were discrepant out of the one hundred and ninety-three (193) claim lines for thirty-six (36) Valley Center residents that were reviewed. As a result, Valley Center provided a response to the initial report as well as supporting documentation.

After reviewing Valley Center's response and supporting documents, on November 17, 2021, SafeGuard issued its Final Findings Report for the audit of Valley Center for the period of March 1, 2016, to July 31, 2019. The review determined there were one hundred and twenty-six (126) out of one hundred and ninety-three (193) claim lines for twenty-eight (28) of the thirty-six (36) Valley Center residents found to have been billed in error. As a result, SafeGuard's final report made three findings: 1) the Case Mix Class identified by Valley Center was not supported by documentation in the medical record; 2) there was insufficient or missing documentation to validate Valley Center's calculated Case Mix Class; and 3) documentation required by State policy was missing from the medical record.

SafeGuard noted, in regard to the first finding:

[SafeGuard] determined that one member's record contained five claim lines that were discrepant due to errors in the case mix calculation. The scores submitted for payment by [Valley Center] were not properly calculated to the appropriate case mix class and were not reproducible. Inconsistencies were noted between the Activities of Daily Living (ADL) documentation prepared by [Valley Center] and the ADL Index Score used to calculate the case mix class. [SafeGuard] was unable to replicate the [Valley Center]-calculated case mix class. Inconsistencies in the medical record documentation did not support that [Valley Center] calculated the case mix class properly.

For example, Exhibit 2, Sample 2, . . . the calculated case mix score was Class 5 by [Valley Center] and was not supported by the medical record. The documentation supported a Class 6. Inconsistencies in the medical record documentation did not support [Valley Center]'s calculated case mix class.

State nursing facilities are required to conduct a comprehensive, accurate, standardized, and reproducible assessment of each resident's functional capacity. The Bureau for Medical Services (BMS) utilizes the standardized Minimum Data Set (MDS) assessment to determine the State specific case mix class. This calculation is completed by utilizing the BMS Case-Mix Classification Workbook, which converts the self-performance/support provided for each functional ADL task into a reproducible score to correlate with the appropriate billable case mix class. These assessments are to be completed on every resident admitted to the facility by day 14 of the admission and reassessed on at least a quarterly basis and annually thereafter.

2

Documentation required to complete the case mix calculation would include the MDS assessment and the ADL record.

SafeGuard noted, in regard to the second finding:

[SafeGuard] determined that 24 members' records contained 91 claim lines that were discrepant, as documentation necessary to support [Valley Center]'s case mix calculation was insufficient or missing from the medical record. Pertinent documentation of the MDS assessment, ADL record, or other documentation necessary to support the calculated case mix class was missing from the medical record.

For example, Exhibit 14, Sample 21, . . . there was insufficient documentation to validate if [Valley Center] calculated the case mix properly. The therapy progress notes were missing from the medical record; therefore, documentation did not support the services rendered.

SafeGuard also noted, in regard to the third finding:

[SafeGuard] determined that 7 members' records contained 61 claim lines that were discrepant due to missing medical record documentation required by State policy.

For example, in Exhibit 9, Sample 13, . . . documentation required by State policy was missing from the medical record. The Pre-Admission Screening (PAS) was missing from the medical record.

SafeGuard's final report of the Valley Center audit attached exhibits that contained an analysis of each patient record examined. As a result of the audit, SafeGuard determined that there was an overpayment of $834,844.15.

On February 24, 2022, the Bureau sent Valley Center a decision adopting the result of the audit conducted by SafeGuard. Valley Center submitted a request for a Document/Desk Review, which was denied on March 14, 2024. Valley Center then submitted its request for an evidentiary hearing on April 11, 2024.

On August 6, 2024, a hearing was held before Hearing Examiner Lewis Brewer. On October 23, 2024, the hearing examiner issued his Recommended Decision. In the Recommended Decision, the hearing examiner held that the findings of the SafeGuard audit were all based on specific requirements set forth in rules applicable to nursing homes in West Virginia providing services which are paid with State Medicaid funds through the Bureau. The hearing examiner acknowledged that Valley Center argued that no West Virginia law or guidance reflects the requirement to provide therapy treatment notes to

3

validate therapy minutes; SafeGuard was able to validate therapy minutes through provided documentation; and that the rules relied upon by SafeGuard may be invalid because they were not properly enacted pursuant to notice and comment rule making. In regard to these arguments, the hearing examiner held that:

> Although therapy treatment notes may not be needed to validate the time spent providing therapy to residents, what [SafeGuard] needed to validate the treatments was progress notes that aligned with the RAI requirement for documentation to indicate that the beneficiary's condition was being monitored on an an-going basis, and which was derived from all direct care staff of all shifts. Further, the audit indicates that the documentation produced by Valley Center failed to support [Valley Center's] case mix calculation, and this failure was not attributable simply to the absence of daily therapy treatment notes.

> Accordingly, the undersigned Hearing Examiner finds that Valley Center has not demonstrated that the findings contained in the [SafeGuard] audit are inconsistent with established requirements applicable to such facilities, or that the application of those rules was clearly wrong.

> Finally, [Valley Center] suggests that the rules relied upon by [SafeGuard] and the Bureau may be invalid because they were not properly enacted pursuant to notice-and-comment rulemaking as required by the decisions in *Azar v. Allina Health Services,* 587 U.S. 566 (2018), and *Loper Bright Enterprises v. Raimondo*, [603] U.S. [369], 144 S. Ct. 2244 (2024). However, this argument fails to specify any federal rule pertinent to this matter which was improperly promulgated. Further, the primary state rule referenced in the [SafeGuard] audit is a legislative rule and when such rules have been adopted by the West Virginia Legislature, they take the form of a statute which may be ignored only if the agency exceeded its constitutional or statutory authority, or the rule is arbitrary or capricious.

On November 7, 2024, the Commissioner of the Bureau for Medical Services issued its Decision adopting the Recommended Decision in its entirety. It is from this Decision that Valley Center appeals.

Our review of this matter is governed by the State Administrative Procedures Act, and it provides:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners

4

have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:

(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the agency;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 29A-5-4(g) (2021); *accord* W. Va. Code § 16B-2-2 (2024).

On appeal, Valley Center argues that the Bureau's Decision is insufficient because it fails to adequately explain its resolution of conflicting evidence and the Decision of the Bureau is against the weight of the evidence.[2] The Court notes that Valley Center must carry the burden of showing error in the judgment of which it complains, and error will not be presumed. *See* Syl. Pt. 5, *Morgan v. Price*, 151 W. Va. 158, 150 S.E.2d 897 (1966); *Cobble v. Lester*, No. 24-ICA-201, 2024 WL 5201017, at *2 (W. Va. Ct. App. Dec. 23, 2024) (memorandum decision). Here, Valley Center failed to provide any substantive citation to the over 11,000-page record to demonstrate the result was against the weight of the evidence, the existence of conflicting evidence, or how such evidence was presented to the Bureau. Accordingly, Valley Center has failed to demonstrate error in the Bureau's decision in regard to the weight of the evidence or the Bureau's resolution of conflicting evidence.[3]

Valley Center also argues "that the [United States] Supreme Court has recently taken up a number of relevant administrative matters . . . any use of guidance that is not

---

[2] The Court notes that consideration of this matter was made more difficult by Valley Center's briefing. Valley Center asserted four (4) lengthy assignments of error. However, the argument section of Valley Center's brief does not "contain an argument . . . under headings that correspond with the assignments of error." W. Va. R. App. P. 10(c)(7). The Court has combined related issues presented by Valley Center's brief for discussion. *See generally Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (per curiam).

[3] Further, the Court notes that on appeal, Valley Center has the duty to support its arguments with "appropriate and specific citations to the record . . . ." W. Va. R. App. P. 10(c)(7). Such specific citations include "citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." *Id.*

subject to notice-and-comment rulemaking may not be used to support a denial of claims." However, Valley Center fails to identify any rule, regulation, or guidance relied on in this matter that was improperly promulgated. Accordingly, Valley Center has again failed to demonstrate error.

Based on the foregoing, we affirm the Bureau's November 7, 2024, Decision, which adopted the hearing examiner's October 23, 2024, Recommended Decision.

Affirmed.

**ISSUED:** August 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White